is 22-271, United States versus Duclos. Thank you. Mr. Brissenden, you might want to move the podium up. There's an elevator. Is that at its highest point? Is it? Oh, it's already at its highest. That's the highest? OK. You're vertically challenged. I'll bend at the knees if I need to. That's good. Actually, I can hear you well. You've reserved two minutes for rebuttal. You may proceed when you're ready. Thank you. Thank you. Matthew Brissenden for Mr. Duclos. I'd like to start, if I could, with the constructive amendment point. Count 9 of the indictment alleged that on February 12, 2018, Mr. Duclos possessed, with an intent to distribute, a mixture and substance containing carfentanil and fentanyl. The problem is the government adduced no such evidence at trial. But he had separate amounts of carfentanil and fentanyl. So the government substituted in three different substances, two of them being mixtures, one of them being straight carfentanil pills. The other two mixtures, one was benzefentanil and fentanyl powder. The other was cyclopropyl fentanyl and carfentanil. So we had this, basically, mishmash of three different substances that were substituted in for what was alleged in the indictment. Prosecutors urged the jury that they could convict based on these substances. And the real problem is we have no idea what the basis of the jury's verdict was in this case, because there is no special verdict sheet. But taken together, are they both a crime that would intend to sell a scheduled drug? They're both controlled substances, right? But for purposes of whether there was a constructive amendment, our argument is that the defendant was entitled to notice of what substance, or what mixture of substances he was alleged to have distributed. The defendant is entitled to know what the crime is that he's being charged with. Isn't that correct? Of course, Your Honor. And he was told that he was charged with having with intent to sell a controlled substance. Why is that an amendment? So, Your Honor, I'm trying to, and that is essentially the government's position, right? And the government is pointing to this court's. I apologize for that. Sure. Go on. No, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I, I. The government's citing to the United States v. Knuckles for the proposition that the basic test and the basic question is whether the prosecution was relying on a complex of facts that were distinctly different from which the grand jury set forth in the indictment. And they're saying, listen, these controlled substances were all found at the same location on the same date. They're all controlled substances. And that makes it fair game. And therefore, there was, there was no constructive amendment. And they're all variations of fentanyl, right? They're either fentanyl or fentanyl analogs, which are treated differently under the law. So they're not all treated the same under the law. There's different statutory penalties for fentanyl versus fentanyl analogs. What's the essential element that changes? So I think if we focus on the, and I know that language is in constructive element cases, either the core criminality or the essential element. But I, but I could. When you rely on, on, on the Wozniak case and the Hassan case for this point, there, the drug changes, right? Right. And the drug you're, it would follow is the essential element. What's the essential element here? So the essential element is when the government alleges that you possess with an intent to distribute a specific mixture of controlled substances, are they should be obligated to demonstrate that you did possess that substance. It shouldn't be true. But you're saying then, I think your answer to my question is that it's the mixture of substance that's an essential element. Do you have any authority for that? I have not seen any authority either way on this subject. I've seen no authority suggesting that the government can charge a specific mixture and then substitute that in with evidence of a different mixture, Your Honor. But it wasn't a different mixture. It was the constituent of parts of the mixture. Well, no, that's not. The judge said that they could find either a detectable amount of fentanyl or detectable amount of carfentanil. Is that how you pronounce it? And so it's not a mixture, but they were both there. In different locations in the house, in different mixtures of substances, Your Honor. Here's part of the problem. Found on the same day, in the same location. That's true, that's true. If there had been a special verdict, maybe this would have been a different situation. But part of the problem is, again, we don't know what he was convicted of. From a double jeopardy standpoint, as I said, one of these mixtures that was found contained benzofentanyl and fentanyl. Another contained cyclopropyl fentanyl and carfentanil. Now, count nine says nothing about either benzofentanyl or cyclopropyl fentanyl. So my question is, given the fact that we have no idea which of these substances the jury relied on, there's three here. We don't know if they're unanimous. What would prevent the government from charging him at a later date for benzofentanyl and cyclopropyl fentanyl? There's no clarity as far as what the jury found here. The verdict's as clear as mud. And the reason it's as clear as mud is because the government was permitted to vary from what was set forth in the indictment and instead introduced sort of this mishmash of pick and choose. You decide, the jury, what he's guilty of here. Certainly, the words of an indictment should have meaning. It shouldn't be too much to ask the government to actually charge the controlled substance that a defendant possessed with an intent to distribute. So are you suggesting, no matter what we do in terms of affirming or not affirming the district court, that we should suggest to district judges that they should use a special verdict when more than one type of drug is at play? Would that help? I mean, it would put an end to your case. It would have, at the very least, provided a degree of clarity. And I think it would have made my argument probably more difficult at the end of the day had the government sought that. It didn't do that in this case. Remind me, this is on clear error? Plain error. It is plain error, Your Honor. It was not preserved. So explain to me how you get over, for example, the first step of that test. Sure, Your Honor. I mean, I did cite in my brief, this court has repeatedly found that where there is a constructive amendment that does satisfy the plain error standard. And my argument is straightforward. I mean, the indictment on its face alleged a specific mixture. And it should have been clear and plain that that obligated the government to prove what was set forth in the indictment. So I keep thinking, were you trial counsel? I'm sorry? Were you trial counsel? I was not, Your Honor. So I keep thinking about an indictment that contains substance. We're setting that conjunctive aside. But singular. It does say a mixture or substance containing both. It doesn't say mixtures and substances. It says singular, mixture substance contained. But so if the plain reading of the indictment language is a mixture of fentanyl and carfentanil, I would think trial counsel, when the drugs are being introduced by the DEA agent or whoever it was, would say they introduce exhibit A as the fentanyl and exhibit B as the carfentanil. And then the cross-examination will be, OK, exhibit A, is that a mixture of fentanyl and carfentanil? No. Exhibit B, is that a mixture of fentanyl and carfentanil? No. Ladies and gentlemen, I rest my case. I mean, isn't that what would happen if it's so plain what this indictment was charging? I suppose there is a separate question, Your Honor, of whether I should have alleged ineffective assistance of counsel. I'm usually loath to do that in the appellate stage. But I absolutely think, when I was looking at this record, I asked myself the same question. Why in the world would you have not gotten up and asked the chemist that question? Why in the world would you not have made that argument to the jury? So it troubles me. But it also troubles me that the government had this information going into trial. They knew exactly what their chemist was going to say. They knew it didn't line up with what they had alleged in the indictment. What would have been the hurdle for them to go back and to clean this up? They did it once, but apparently didn't actually fix it. That burden is on the government, Your Honor. I did also want to point out, just as far as the Knuckles case goes, this case is not Knuckles. Knuckles, the prosecutors set out to prove exactly what was alleged in the indictment. It was a heroin conspiracy. All their evidence focused on a heroin conspiracy. The only cocaine evidence came in from defense counsel. And so my question is, if in Knuckles, the government itself had failed to introduce evidence of heroin, what was alleged in the indictment, would the result have been the same? And I submit it wouldn't have been. I submit under those circumstances, it would have fallen on the Wozniak end of the continuum, which is where this case falls. All right. Thank you, counsel. Thank you very much. We have two minutes reserved for rebuttal. Thank you. Attorney Dabak? Dabak, how do you say your name? Dabak. Dabak, go ahead. When you're ready. Good morning, and may it please the court. Ishan Dabak, law student intern, appearing with the court's permission on behalf of the government. All three of defendant's challenges to his convictions fail. First, count nine was not constructively amended because the evidence at trial proved exactly what the government charged in the indictment, possession with intent to distribute fentanyl and carfentanyl. The reason the government charged mixture substance in the indictment is that that's the language in the statute. Section 841 uses the terms mixture substance. The other counts in the indictment also use the same term, mixture substance. But if you don't have a mixture, then you haven't met the statutory terms. We disagree with that. First, I note that the government did prove a mixture, in fact, multiple mixtures. First, that tan powder inside the gray jewelry box was, as defendant himself recognized, a mixture containing a detectable amount of fentanyl. And the carfentanyl pills, as the detective testified, contained a detectable amount of carfentanyl. Mixture substance of fentanyl, mixture substance of carfentanyl, the government proved both the drugs that it had charged in the indictment. But there wasn't a mixture of the two drugs. We don't believe that the government was required to prove a single mixture. That's what the statute says, correct? You just told me that. The statute says mixture substance because Congress wanted to ensure that when drugs were mixed with other substances, the whole mixture would be weighed at sentencing instead of the pure drug. I understand that. That's what Congress wanted. And you just tried to follow their instruction here. When the government drafts an indictment, it has significant flexibility than proving those charges at trial. An indictment just has to fulfill two functions. First, it has to provide defendant notice of the charges and notice of the evidence he would face at trial. And secondly, it has to protect him from double jeopardy. We have no reason to believe that the defendant was not on notice that he would face evidence of carfentanyl and fentanyl. He never contested this evidence. The evidence was in one place at his house, one time. It was found during the same investigation. Defendant made no effort to distinguish his possession of fentanyl from his possession of carfentanyl. If he wanted to hypertechnically analyze the word mixture, he would have pointed out somehow he was caught off guard, as in the Wozniak case. But this case is even easier than Knuckles, because both of the drugs mentioned in the indictment were proved at trial. The jury found beyond a reasonable doubt. We have no reason to believe there's been any constructive amendment. And to the extent there is an error, defendant can't meet the demanding plain error standard. Defendant has to show that this error was clear or obvious. But the mixture of substance language in the indictment just put defendant on notice that he was defending against evidence of fentanyl and carfentanyl. Never challenged the evidence. There's no reason to think. Mixture means more than two separate parts of the drugs. Do you know, I know you're a student intern, but do you know if it's the policy of your office to never ask for a special verdict because it would put you to more proof or what? Let me ask. There is no such policy. But do you ever ask? This would have been a case where a special verdict would have been very helpful. First, I note that the law in the circuit has recognized that indictments are drafted in the conjunctive, but they may be proven in the disjunctive. That's why it says mixture and substance. But they're not contending that that means it was a constructive amendment unless they show both a mixture and a substance. We believe the same language applies to the fentanyl and the carfentanyl. When it mentions carfentanyl and fentanyl, all the government was required to do is put forth evidence of a mixture or substance containing a detectable amount of fentanyl or a mixture of substance containing a detectable amount of carfentanyl. The government did both of those things. And all these drugs are covered by 841, is that right? Correct, Your Honor. So you're saying that the fentanyl they found was a mixture of fentanyl and what? And benzoyl fentanyl, that tan powder, was a mixture of fentanyl and benzoyl fentanyl. But there's no dispute that it was a mixture, as that term is used in the statute in the indictment. And the carfentanyl was a mixture of what? The blue pills? The blue pills contained carfentanyl. And we have no reason to think else. The testimony was not clear on this point. But most likely, the pills would not be pure carfentanyl. They would be carfentanyl mixed with some other. But most likely, it's not evident. But there's also the white powder in the green bag, right, which is carfentanyl. Exactly. There was also a powder found in the kitchen cupboard that did contain cyclopropyl fentanyl and fentanyl. So there's a carfentanyl. You've got one mixture with fentanyl, and you've got one mixture with carfentanyl. Correct, Your Honor. They just aren't mixed together. They're just not mixed together, and neither did they need to be. Because all the indictment needed to do was put the defendant on notice that he was going to be defending against evidence of fentanyl and carfentanyl. He bore the burden of establishing why he was caught off guard at this stage on appeal, why he was surprised by the evidence of the two drugs separately, even if they were in the same jewelry box. All right, continue. Second, I note that count nine was not duplicitous, because it alleged a single crime. This was one act of possession at one time, one place, with intent to distribute. It was properly charged in one count. So we've got the cases that seem parallel, but have an overarching conspiracy charged, right, Tutino and Sturdivant? So Tutino, this court recognizes as an exception to the general rule that separate crimes must be charged in separate counts, but that general rule applies only when there are separate crimes to be charged in the first place. In this case, we have a single act of possession with intent to distribute a controlled substance. Right, but in those cases, there's an overarching conspiracy to contribute those substances. We don't have a conspiracy charge here. We don't, but I note that count nine covers only one crime, so it's properly charged in one count in the indictment. Those cases also involved the same drug across multiple transactions, but this case is quite the opposite. We have multiple ways of committing the same crime at the same place at the same time. Finally, I note that the district court committed no ex post facto error by using the 2021 sentencing guidelines. That's because the 2016 guidelines would have produced exactly the same sentencing range. And even if there is any error as to any of these, that error was not plain, was not clear or obvious as it would be required under plain error review. Well, didn't you just say the sentencing range is the same, so that there can't be error in the use of the 2021 sentencing guidelines? Correct, Your Honor. If the 2016 guidelines were used to calculate the sentence, it would have come out exactly the same way because the cyclopropyl fentanyl would have still been treated as a fentanyl analog according to the drug quantity table in the guidelines themselves. It would produce exactly the same sentencing range. Fentanyl analogs are being created faster than the sentencing guidelines on the US Attorney's Office or the Congress can deal with them. Isn't that true? Correct, Your Honor. I don't know what to say. I just wanted to put that on the record. Well, and the guidelines treat analogs more partially than fentanyl, don't they? The guidelines subject fentanyl analogs for 1 to 10,000 ratio, where fentanyl is 1 to 2,500. But the 2016 drug quantity table, in relevant part, looks exactly the same as the 2021 table. It lists fentanyl analogs separately from fentanyl, meaning when a jury has found beyond a reasonable doubt that cyclopropyl fentanyl is a fentanyl analog, as that term is used in the statute and used, I see that my time is up. Nope, that's just the slow down or California speed up. When a jury has found beyond a reasonable doubt that cyclopropyl fentanyl is a fentanyl analog and the drug quantity table in the guidelines itself provides a separate category for fentanyl analogs, the district court was correct to use the category for fentanyl analogs and use the 1 to 10,000 ratio. If the panel has no further questions, we urge the court to affirm the judgment below and rest on our brief. Thank you. Thank you, Mr. McDonough. And Mr. Bresenden, two minutes. So, Your Honor, what I heard from the government is initially in the first half of the argument, they tell us that, I'm mistaken to read this indictment as charging a singular substance or mixture. What they're saying is, well, we're really charging separate substances found in different locations of the house. Traditionally, when the government finds different controlled substances that the defendant has intent to distribute, those are charged in separate counts. So, to me, I don't think the government can have it both ways. On the one hand, they're saying, no, no, no, we weren't charging one mixture of one substance, we're charging multiple substances. And then the next breath, the government says, this indictment isn't duplicitous or this charge isn't duplicitous. If the government was, in fact, charging multiple separate controlled substances found at separate locations, and that's certainly not playing from reading this count, but if that was the government's intent, then it should have been charged in separate counts. And if the government was not gonna charge it in separate counts, then it was incumbent on the government, again, coming back to the special verdict sheet. The government cites to the McCourty case, arguing, look, here's an incident where crack cocaine and powder cocaine is charged in the same count, but the difference in that case is the judge was very careful to make clear through a special verdict sheet exactly what the jury found. And again, we don't have that here. We have no basis of understanding what Mr. Duclos was convicted on, whether there was a unanimous finding, which of these substances he intended to distribute. And the government says, there was no prejudice, he obviously possessed these substances, and that's true, these substances were clearly found in his apartment, but there's a second prong of this statute, and that was an intent to distribute. And there, the evidence was incredibly thin. Two of these substances were found together in a box with a spoon and a needle. Mr. Duclos was an acknowledged lifelong opiate user, and the government's own agents got up and told the jury, these amounts were consistent with personal use. And so, there was really very little evidence. Did that relate to the fentanyl? It related to everything that was found in his house. The amounts found in his house, the government's own agents testified were consistent with personal use. Two substances were found together, the carfentanil pills and the benzifentanil and fentanyl mix were found in a small box with a spoon and a needle. And Mr. Duclos told agents he was an opiate user, he described himself as an opiate user in his posters, his online posts. The point was, there was very thin evidence that any of this was intended for distribution. Because the court decided not to charge him with all the mailing that he did? I mean, that was clearly intended to distribute, right? You're referring to the sentencing portion of the- Yes. Sure, I mean, I think what the district court judges, essentially accepted probation's calculation that included those mailings, but then gave him something of a discount when it came to the time of sentencing. He sent some of the mailings. But that certainly shows intended distribute, doesn't it? Well, what's interesting is what was contained in those mailings didn't match what was found in the house. What was contained in the mailings was only, only cyclopropyl fentanyl. Every single mailing had one substance. None of the things found in Mr. Duclos' house matched with what he was sending out to other people. So that's another part of the reason why there was a real question here, whether there was intent to distribute any of these things. And reasonable jurors couldn't disagree. We had an incoming package of fentanyl, but the outgoings were the- All the outgoing, and I think it was intercepted. I don't think I ever reached them. I think there was an incoming package that was intercepted. But again, these substances didn't match with what he was sending out. All right, thank you. Thank you very much. Thank you, counsel. Thank you. Thank you both. Well, very well done. Yes. Thank you. Matter is taken under advice.